United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Okay, good afternoon. Thank you for attending this zoom session. We have 2 consolidated appeals this afternoon, both styled Ben's lift versus Silva, 24, 11, 896 and 24, 12, 592. Mr. Kauffman and Mr. Letnan, if I pronounce that correctly. Yes, sir. But however you prefer. Okay, very well. Okay. And is our appellant reserving time for rebuttal? Looks like 3 minutes. Yes, sir. Correct. Very well. Okay. You may proceed when ready. Just recognize that the clock that you see will turn yellow, which is your indication that your time is winding up when it turns red. If you're answering questions from us, then feel free to keep answering. But if not, then we'd ask you to wind up your presentation. Understood. Very well. You may proceed. Thank you. Good afternoon. Your honors Douglas. The appellant, the respondent in the court below and the mother of the minor child, Melissa Silva. I was, as you know, it's reserving 3 minutes of my time for rebuttal. This case involves the convention on international child abduction. The district court issued 2 orders, both of which are deeply flawed, ordering the return of the child to Denmark. I'll first briefly address the 2nd return order, which purported to enforce the 1st return order. Nobody disputes that a district court retains jurisdiction to enforce an order while that order is on appeal. But as our briefings in the 2nd appeal made clear, the case law is clear that the district court is divested of jurisdiction to modify or change any aspects of the order while it is on appeal. And that is exactly what the district court did here. First, can you tell me where is the child and where is Miss Silva? Miss Silva is in the Southern District of Florida jurisdiction with the child. All right. So is there still an arrest warrant pending against her? And has there been any change to the Danish courts order of child of custody in favor of the father? There is a European arrest warrant issued in Denmark for Miss Silva. There has been no change to the custody order granted by the Danish court. It is currently being appealed in Denmark. Thank you. You're welcome, ma'am. The 1st return order included numerous ameliorative measures, the nature and effectiveness of which are a subject of the 1st appeal. The 2nd return order eliminated all of these ameliorative measures and sought to turn the minor child over to the petitioner for an immediate return. Can I ask a follow up question to Judge Abudu? So does I've actually never seen this before. And frankly, neither of you guys argue it. So I'm asking it more as a matter of curiosity than anything else. But does the fact that the mother is a fugitive effect at all are anything to do with this appeal? It does. It affects the the effectiveness and of the ameliorative measures. The ameliorative measures as put forth in the 1st return order included that the child shall not be turned over to the petitioner. If we are to if we are to consider that fact, and I want you to finish what you're saying with regard to that, and I want to get into the ameliorative conditions. But if we are to consider that fact, then don't we have to consider it as part of the fugitive disentanglement doctrine? In other words, if you're arguing to your benefit, then doesn't the other side get to argue that since the mom is a fugitive, that she doesn't get the benefit of also asserting appellate rights, which is pretty standard doctrine in both civil and criminal cases? I don't believe so, Your Honor, because the analysis of a district court facing a petition is fairly narrow. It is simply a decision, a determination of which country's courts are the proper forum to adjudicate child custody issues. It's a question of which courts have subject matter jurisdiction. I know, but your client's seeking relief both below and here. Part of that relief is to assert a grave risk exception, which is an exception under the convention that allows sort of to differentiate the status quo or the pre-status quo ante. And you're asking for that relief here, and I understand that. I understand your arguments, and you have some really good ones. But I guess my question is, under the fugitive disentanglement doctrine, where someone is a fugitive and seeks affirmative relief, don't we generally say that we sort of stay our hand at that point? Your Honor, I admittedly am not versed, well versed, on the fugitive disentanglement or entanglement doctrine. However, I will state that the district court is under no obligation to consider mutilative measures. Once it finds a grave risk of harm, it can deny the petition outright end of story. It has no obligation to consider mutilative measures. But if it does, the district court has the obligation to ensure that they protect the child. The Supreme Court has made explicitly clear in Golan v. Assata two years ago, the primary goal of the convention is the safety of the child. So if the mutilative measures are not sufficient, regardless of why, if there exists a grave risk of harm, the district court should deny the petition. Well, let me ask you this, just following up, I guess. I mean, I know this is a core, if not the core of the appeal. But how can you really say that the district court made a finding of grave risk when the only sentence, so far as I can tell, in the order that refers to grave risk begins with the word although? Although Silva argues that there is a grave risk. In effect, you know, I find that the Danish courts are well equipped to protect the child. Understood, Your Honor. The district court did not make an explicit finding as to grave risk. But if a petitioner proves a prima facie case for return and no affirmative defenses exists, it's simple. The district court grants the petition, turns the child over to the petitioner for the return to the country of initial residence. The existence, the imposition of these affirmative ameliorative measures, which all serve to keep the child away from the petitioner. The child shall not be turned over to the petitioner, not just for the return flight, but while they're in Denmark, when they're back in Denmark, the petitioner will shall arrange separate. That fact doesn't seem clear to me from the order. Now, I will grant you that the district court's order is not a model of clarity. I wouldn't use this as a sample for other district court judges. But it sure seems to me that what the district court is saying here is until the Danish court can assert jurisdiction back over this case. These are the measures that I am putting in the place. That's how I read the ameliorative measures. And I will concede that I tend to agree with you that their existence seems to indicate at least an implicit finding of grave risk. But I don't see how we read this as all going forward until all time. I am determining custody, despite the fact that I have said the Danish court has primary custody here. All I'm doing here is making sure that we put ourselves in the status quo ante. So I don't know that I read the ameliorative conditions as broadly as you've just stated. Why am I reading it? If I'm right, why am I reading it correctly? And if if I am right, then does that not undercut your argument? No, your honor, it doesn't. Because you said I am not determining custody. Right. So understood that the district courts never are determining custody. Right. They're simply determining which court, which form should be the one to determine custody. And if there was no grave risk of harm and if the petitioner approved the final patient case, then the child is returned to Denmark in the in the care of the petitioner. And at the time in on May 31st, there was a temporary full custody order had been granted ex parte in Denmark, a temporary full custody order. Well, you say full custody. What it really is, is. And I think you guys, part of it is none of us are family lawyers here and no one's an expert on this. And none of us are Danish law experts, but it gives full parental authority is the way that the order is phrased. It isn't a custody order. And that seems to be different. In other words, one has a parental authority to make decisions for the child that are different than necessarily where the child lives at any given time. In other words, there can be a split. One parent can have full parental authority over a child. But a child can have a split arrangement where they live a few days with one parent and live a few days with another parent that those things are not inconsistent in family law. I don't understand why it would be inconsistent for the district court to say until the Danish court can decide these things. I'm having him live with the mother and he has to support and they have to be separate until the Danish court can take care of this. Why is that inconsistent with giving the father full parental authority? The let me say, first off, the district court has no jurisdiction to order the respondent back to Denmark. She's a U.S. citizen legally here in South Florida. Why? I can't say why. Why? She sought relief in the district court. The district court. We all agree. The Supreme Court has said has has the authority to enter ameliorative measures. Why can this report not in the courts of doing this say if the child has to be returned and you have to be the one to bring the child back? I don't understand why. Why the district court doesn't have authority in this case to do that very thing. Because the convention doesn't purport to have authority over the parent. It's only over the child. It's a petition for the return of the minor. I'm having trouble hearing you. I'm sorry. That might be on my end or yours. Can you hear me now, sir? Can you hear me now, your honor? Mr. Layton, and I think it's on Judge Lux and Judge Luck, can you hear me? All right. It appears to be on my end. You go ahead. Sorry. I lost my train. The question, I believe my recollection. It was about why can't the district court, as part of ordering the return of the child, require the mother to be the one to return the child? If I understood Judge Lux question. Yes, your honor. I believe you did. And because the convention is is only purports to apply and to have jurisdiction over the children. It's a petition for the return of the minor child. There's nothing in the convention purporting to tie it to the to the petition or to the respondent or to a parent. Just as the court would have no authority to order the petitioner to appear in Florida for a certain amount of time to take care of the child. That that answer your question, sir, I guess probably can't hear me. You know, Mr. Layton, as much as I hate to do this, I don't want you to lose the effectiveness of your argument. Let's pause and let me let's see if we can get this technical glitch worked out. I think it was at about two and a half minutes when this started going sideways. So we're going to put that amount of time back on the clock. And let me just get our I.T. people on the line to see if they can get Judge Luck Judge Lux connection fixed. Yes, sir. You shouldn't have to argue to two judges when there are three judges on the panel. So just bear with us. I'm very sorry. All right. Stephanie, can we roll the clock back to three minutes? A little bonus time for Mr. Layton and for having to endure that indignity. All right, Mr. Layton, feel free to pick up where you left off. You might want to repeat the answer to Judge Lux question, because although Judge Abudu, I think, got it just right. I don't think Judge Luck heard the answer. Concerning whether why doesn't the court have a jurisdiction over the mother? Correct. And the answer, Your Honor, is because the convention doesn't purport to to have authority over the parents. It's a convention for the return. It's a petition for the return of the minor child. It's a convention for international child abduction. Every remedy is regarding the child's return or potential return to the country of habitual residence. It does not purport to authorize the deportation or the ordering abroad of of the parents any more than it would. Then this report could be authorized to require the petitioner to come to Florida. What do we make, though, of and I hope everyone can hear me OK, what do we make of our statement in Barron case that you all rely on a lot at 1349 that, quote, undertakings and undertakings? Just another word for a military measures commonly include restraining orders, arrangements for transportation and lodging costs, and sometimes provisions for a child's education. In other words, you're telling me that that we say that it's common that you can put a restraining order on someone in a foreign nation and that that is perfectly fine. But asking a mother to travel, a mother who is seeking relief from a court is asking the child to travel as part of making sure that the child is safe, that that is without the court's authority. I'm having trouble understanding why that's not within the court's authority once the parties are before the court and they litigated in front of it. It's under the court's authority to to order those things in that other country, not that they can order the respondent to return. However, it has to make sure that any undertakings it requires, such as you just described, are guaranteed to be effective and alternative. Well, I think there's a different part than than authority because you make both you make both points in your brief. But but it seems to me that the court clearly has authority over the parties that are litigating in front of it to order them to do things in order to do ameliorative conditions. And that seems to be within the sort of the general realm of what undertakings are allowed under the law. Well, no one's supporting her. They're just saying you have to travel with your with your child and stay with your child during this proceeding. Yes, sir. That's what it seems to me. Tell me if I'm misunderstanding. No, sir. I don't. I do not believe that ordering the respondent to return is within the gambit of what you just described of the measures you just read off. And I will point out just earlier on 1351 of the same case, this court said undertakings may be useful in some situations, particularly in cases where parental violence is not alleged. When grave risk of harm to a child as a result of domestic abuse, however, courts have been increasingly wary of ordering undertakings to safeguard the child. And just prior to that, because the court granting or denying a petition for return lacks jurisdiction to enforce any undertakings it may order. Even the most carefully crafted conditions of return may prove ineffective in protecting a child from risk of harm. That's at 1350. I see them. I'm out of time, Your Honor, and I'll reserve the rest for rebuttal. Very well. You've got your full rebuttal time. And again, we apologize for the interruption, sir. Mr. Kaufman, please. The court. My name is Ron Kaufman on behalf of the petitioner below and the Pele here. And he's also the father of the child ISB. The core premise of the convention, contrary to what Appellant has told you, is not the safety of the child. It's that the interests of children. Are best served when it's the courts and the habitual residents that determine issues relating to custody. So the convention is really more of a forum selection type of clause to determine what's best for ISB, the child in this case. So council seems to me that the big issue between you is whether there is an implicit finding of grave risk or not. Because if there is, then what the district court did was have a milliliter of conditions in the return order. And then in the enforcement order, it seems to have taken those away. And I think there's some jurisdictional implications to that. If there isn't a finding of grave risk, then these regular other parts of the order are sort of superfluous or additions and changing them doesn't really have jurisdictional implications. I think those are that seems to me what this rises and falls under. Give me your best argument why we should not read the district court's first order, the return, what you guys call the return order, as not making an implicit finding of grave risk of harm. Because, first of all, Judge Luck, the judge, although these findings were not a model of clarity that you would use for every district court, he was emphatic and repeated himself. His one concern was how to get the child from Miami to Denmark. But there was a reason. It's because of the danger that the father posed. Let me just read to you certain parts of the record and then please respond to them. So I'm going to read to you four or five. This is from page 80 of the transcript. This is docket entry 59 quote. If you give it to the father, because I think that would be very disturbing to the child. Page 81. If the safety and welfare of the child were my only concern, I would take her away from both of them, including the father. Page 83 and give it to the father that she hasn't seen in months because I think that would be devastating to that little child. This is at page 89. I am not going to order the child to be turned over to the father, because I think that would be very, very traumatic to the child. The child is about two and that would be awful. How are those not findings of a grave risk of harm? If relief that you were seeking was wasn't to befall the child and then add to the and add to that all these conditions that we're at. It's an excellent it's an excellent question. The issue that the judge was concerned about was ISB was two years old at the time. And what he said and what you didn't read in the context of what he was referring to about being devastating for this child was having been deprived of his of her father for a year because of the abduction. Just handing her over is going to be creating separation anxiety for a toddler. I'm not sure that there's certainly that going on. And I did read the whole thing. I just want to be clear. But but in page 81, he's the district judge specifically references the safety and welfare of the child. If that were this concern, I would take them away from both parents. In other words, the district judge is saying that if if I'm only concerned about safety or welfare, then I would not give this child to the father. How is that not a finding of grave harm or implicit finding of grave harm? First and foremost, the judge was specifically admonishing both of these parents for being lousy parents. Why was it the safety of the child because of physical violence? No. What the both of the parties had. Well, what the father admitted to was that they met at Burning Man and recreational drug use was a part of their life before, during and after this child was born. That is how to reconcile. So. So you add into that, there's a second piece because you add into all the things I just talked about. And I don't read all of them, but there's there's a few others you add into that these conditions which I don't know how to see them other than as a military conditions. And I think you're opposing counsel is right. There's no reason to impose those. But for and I'm not sure there's even authority to impose them absent a finding of grave risk of harm, because what the Supreme Court has said is those aren't in the convention. They're only implicitly part of it based on the discretion that a district court has. Once there is a finding of grave risk, whether to return or not, that's sort of implicit in that discretionary call. But you only get there once you make a grave risk finding. So how do we read those statements I read to you, plus these conditions that are that are given to not have some sort of implicit finding of grave risk of harm? Judge Luck, the key to your question is that when in the United States Supreme Court of England, a myriad of measures could be issued if there is any risk. It did not specify grave risk in Baron versus Beatty, which we've all talked about this court. And I can read the court if I could find it really quick is one of the few circuits in the country that does not require a finding of grave risk in the event it wants to use a myriad of measures to return a child. And when I use the term a myriad of measures and when I used it in our briefing, what I'm referring to is this umbrella term that could include everything from undertakings to get protective violence, domestic violence, injunction protection, paying for things. I don't I don't doubt your position on that, but I'm just I'm not certain that what you first said, which is that they could impose these for any risk is true. I'm reading the Supreme Court. I'm reading Golan, and this is at page 678 of the opinion under the convention and ICARA district courts discretion to determine whether to return a child. We're doing so would pose a grave risk of harm includes the discretion whether to consider a myriad of measures that could ensure the child safe risk. I don't read the court is saying that if there's any risk, the court can do that. What the court is saying is, if it's going to return to spike grave risk, it can add in these conditions, which seems to be exactly what the district court did here. This court in Baron has approved a myriad of measures without a finding of grave risk. And even after the Supreme Court's Golan, it was referring to a myriad of measures for risks, not necessarily grave risk. And that's an issue that's in conflict with other circuits, which do require, in fact, a finding of grave risk before you could actually impose a myriad of measures. But here, when you look at what the judge was concerned with and repeated over and over, taking a two-year-old who hasn't seen their father and sending her back with this person she hasn't seen in over a year, that was devastating to the judge. And that was the one finding he repeated over and over and over. And if you consider one of his ameliorative measures, give me a travel itinerary. What does that have to do with safety? That has to do with getting a child, a two-year-old toddler. But the logistics are different than you can't live with each other and someone has to support the other person. Those are different. Let me ask you this, counsel. Assume that I'm right, that there's an implicit finding, and that these are ameliorative conditions. So assume that. Does not the enforcement order rub up against what I'll call the Griggs rule that once an order is on appeal, a court can't, absent a motion to alter or amend or a motion to vacate under Rule 60, absent those things, affect the very thing that's on appeal? So this is the highlight of the case. Because what the judge did was take your implicit finding of a grave risk of being with this father and say, the father takes the child. Right. The only way to reconcile. Isn't that the problem? I agree with you. There isn't a way to reconcile it. I think that's why the order was staying. Unless, unless Judge Luck, he was never concerned about the safety of the child with the father. He was concerned about a toddler who hadn't seen his dad in two years and get on a plane and see ya. That happens every time you drop off a child at daycare. This happens every time there's an exchange of custody and an allegation of alienation. It happens every time there's an exchange at the courthouse when the child is returned. It seems odd, though, to use a second order to interpret the first order. But again, you're fighting my hypothetical. So assume that there is an implicit grave risk in the first order and assume there are ameliorative measures. Does not the second order read in that context rub up against the Griggs rule? It would depend on what the grave risk that was identified by the court. Don't forget there. Well, but it's not just the grave risk. It's the I mean, what we're talking about on appeal, what we spent all this time is the ameliorative measures and their effectiveness. That's the very thing that was on appeal. And yet the district court gutted those again, assuming that I'm right in my reading. Assuming I'm right, the district court gutted all of those and said, all right, there's no more separation. There's no more support funding. The kid can travel not with the mother, but with the father. The father gets the travel documents, not the mother. I mean, everything changed. So there's a fact that the panel may not be aware of because I heard Judge Abudu talk about this. The or maybe it was your honor. The custody order that was in place as an ex parte provision by the court in Denmark. Is not the current order. I understand. So the judge knew the district judge in this case knew that there was a judge, that there was a family court, that they had issued an order. And that upon return to Denmark, the judge in Denmark would have full, complete control over custody. And it is the only court in the world with child custody jurisdiction over ISB. All that's true. But again, I go back. How does the second order not rub up against the rule in Griggs that a court is divested of jurisdiction to contramand the very order that is on appeal absent rule 59 or rule 60? If your honor finds that this this my client, the father was the grave risk of harm as. Well, I didn't find anything. I'm just I can only read what's there. But what I'm trying to do is assume that that is the case. Trying to understand what the implications of that are for the second order. That's those are the questions I'm trying to ask you. And so assuming there was an implicit finding of grave risk, assuming the district court imposed a mule of measures, assume that. Does that not mean that the second order contramanded those things outside of the court's jurisdiction under the ruling? I think that would be. But I'd have again, I would have to look at what those measures were that are under review. For example, a lot of this, in our opinion. But we know what they are. They were that the kid is to travel with the mother, not the father, that the travel documents were to be given to the mother, that the father was to provide support for the mother and live separately from them until the court, the custody court was able to then weigh in. Those were the measures. Were those not countermanded by the second order? Yes, I think. But if the court describes them as a mule of measures in the sense that there was an identifiable grave risk of harm to this child, and these were imposed in order to protect, then yes. But that's not how we see it. This was mere travel restrictions to get a toddler to Denmark. And what is the court to say now that there is a final order adjudicating sole custody to the father and rejecting the mother's rights of access and visitation? Now we have the only court in the world with child custody jurisdiction saying it's safe for the child to be here. It's safe for the child to be with the father. The mother actually no longer has the rights of access. If this court were to reverse and say it's too unsafe to go to Denmark, the court in the United States, which does not have child custody jurisdiction over this child and does not look to do that, is creating a conflicting order with the court, which does have child custody jurisdiction. What doctrine is being implicated there? I mean, we know that mootness doesn't apply. Chafin speaks to that, that she's filed this petition and it's still a live controversy. But what about the redressability issue for purposes of standing? Or is there some other principle that you're speaking of that needs to be considered? When Your Honor discusses mootness, mootness as relating to the child having been returned already in Chafin did not moot the appeal. That's not what I'm referring to. The mootness is now that a court with child custody jurisdiction has determined the best interest of the child is to be with the father in Denmark. To create a conflicting order completely undermines the convention. And this is from the 10th Circuit. And I would like to get you the citation. I guess maybe we're saying the same thing. Didn't have an intervening order from a foreign court like we have now that establishes custody, at least for purposes of the Danish courts. And as I said, again, I'm trying to understand what is the principle or the doctrine that is being implicated, given that intervening act? It would be mootness, but contrary to the Chafin case, the return did not make moot the appeal. And what I'm referring to is now you have a conflicting child custody decree. And this court cannot now tell the court and the habitual residents, which is supposed to decide custody. Why is this? I'm having trouble understanding why the district court's orders here are in conflict. The district court explicitly in both orders says we are not determining. I mean, you even wrote the second word. We are not determining custody. Right. So how is there a conflict if the court were to reverse the order and say the child should not be placed with the with the father at this point? Now, if we were to reverse this, if we were to reverse the second order, we would just reverse because the district was without jurisdiction to do what it did. That would be the only basis to reverse. But placing the child with the mother as opposed to not returning the child to the father in Denmark to the habitual residents, that would create an international child custody conflict, which the convention is designed to prevent. OK, Mr. Kaufman, thank you very much for your presentation, Mr. Layton, and you've got your rebuttal time available to you. Yes, sir, I want to start with just the question of mootness right there and request the ability to offer supplemental briefing on it because it is a complicated issue. Opposing counsel was referring to Navani versus Shahani from the 10th Circuit in 2007. I'm prepared to talk about it, but that would last much longer than three minutes. The bottom line is the district court is determining which forum, which country's courts have subject matter jurisdiction. It is incorrect to say no matter what, in all cases, regardless of what this court and the district court say, the Danish courts have subject matter jurisdiction over custody. That is incorrect. That would mean that in every petition for the Hague, you would determine what's the habitual residence of the child. And that would be it, because then you send the child back to the court of the country of habitual residence for custody determinations. But I'll leave it at that. And if you want more. Yeah, maybe supplemental briefing, because, again, so it's a little different. The child and the mother are still in the United States. But let's say that she had complied with the first order that said you have to return the child and the child is now in Denmark. She's still seeking custody. We know this case is a moot, but you've got a Danish court that has already established a lot of the underlying issues at stake here. So what what do we do? Because if this court were to reverse, if the if Miss Silva were ultimately to prevail in this case, it would be a determination that the U.S. courts are the courts with subject matter jurisdiction to decide child custody issues and that the Danish courts would not have subject matter jurisdiction to do that. Any other ruling would allow multiple courts. I think it's actually the reverse. It would allow multiple courts in multiple countries to have jurisdiction. And then it would simply be what the opposing counsel is trying to avoid. It would be whichever litigant, whichever parent gets to the courthouse first. The left behind parent gets an order from his country saying, I've got custody. There would be no purpose for the Hague petition. So it is not it is not a correct statement that no matter what the courts in the country of habitual residence have child custody or have jurisdiction to determine the child custody issues. That's what the purpose of the petition is to decide which courts and which countries courts have jurisdiction. So we still this court and then, if appropriate, the district court determine which court has jurisdiction. A denial of the petition prevailing from Miss Silva is a determination that the U.S. courts are the ones with subject matter jurisdiction. Turn quickly to the findings of fact regarding great harm. Judge Lux cited a number of things from the record from the district court, but none of those statements actually appear in the return order. Are those out of outside the order statement sufficient for purposes of determining that the district court sufficiently articulated findings of fact for purposes of determining a grave risk of harm? Your Honor, if I may, I'll ask that in in two stages. The first stage is the district court didn't know how to say what it wanted to say when it addressed the challenge to the exercising of the custody rights by the petitioner. The district court explicitly said the court finds petitioner is so shown by a preponderance of the evidence that the petitioner was or would have been exercising rights of custody at the time of removal. Address the standard made the ruling when it came to grave risk of harm. He said, excuse me, the district court said, although respondent argued grave risk of harm. This court finds that the court in Denmark is fully capable of protecting the child if necessary. There absolutely was no implicit finding that there was not a grave risk of harm. So if this court determines that, can I ask you a question? Is the easy answer to that question not on page one of the return order? This is not an entry forty six, which states for the reason stated on the record, the court finds this that and the other. In other words, didn't the court explicitly adopt the statements and made on the record as a way in order to not have to write a 50 page order in a case that had some emergency to it? Well, I don't believe that. So the the district court held essentially a colloquy with the council for the respondent during closing arguments, a back and forth, some question and answer. And if and those are not part of the order, you can explicitly show where the court begins its order. The court, say, for the reason stated on the record, isn't isn't what I read reasons that were given by the district court. Well, I would say, no, your honor, I would not include all those. I would not include anything that's stated in the quality as colloquy as reasons on the record, because you had instances where the district court was questioning certain countries and questioning the ability of other countries. And if it was this country, it might be OK. The if you're going to accept everything that the district court said in the colloquy, you'd have to give credence to. Statements like in an international survey of corruption, Venezuela was considered the second most corrupt country in the world. Those are not findings of fact. Those are not reasons stated on the record. That's a call. We that's a discussion that is dicta that is not part of the order. And specifically, the district court could have made a part of the order and it could have said, I find no grave risk of harm exists. If the district court explicitly did not make that finding, it it attempted to either it either implicitly found it or attempted to pass that duty on to the Danish court, which is explicitly contrary to a law. So, I might have gotten myself all turned around here. I sat on a panel this morning. So this is my 5th case of the day and I'm a little brain foggy, but I think you're fighting off a life preserver that the judge luck was trying to throw you the statements that he read earlier from the oral colloquy. I think we're quite favorable to your position that, in fact, there might be an implicit finding of grave risk. And he invited you to adopt to say that, in fact, the district court adopted those into the order, but you've now expressly said, no, no, no, he most certainly did not, which leaves us to judge a Buddha's point with the only thing on the face of the order being this sentence that begins not in significantly to my meeting with the word. Although although you made an argument, I find that the Danish court is capable of protecting the child. He did to answer your questions, your honor's comment at the end. He found that the Danish court could protect the child. He had absolutely no evidentiary support of that. And he had the obligation to make a finding, meaning, meaning, whether or not a great risk of harm exists, not a finding, whether or not the Danish court, the Danish government can protect the child as to the comments made in the in the colloquy between that I've referred to. Yes, the district judge, the district court definitely gave reasons why explained reasons why he was not willing to turn the the child over to the petitioner. And those those those are those can be considered as showing how he arrived at the ameliorative measures. I mean, in fairness, I mean, in fairness, a minute ago, you're pretty stridently saying, no, no, no. Those are dicta. They're like the comment about Venezuela. But the ameliorative measures are are the crust of it. Your honor. Absent the imposition of the ameliorative measures have no place and purpose outside of a finding of a great risk of harm. Okay. All right. Well, I think we've carried you well beyond your time. Judge, judge Buddha. Do you have any further questions? Okay, Mr. Leighton and Mr. Kaufman, thank you both so much, Mr. Leighton. And again, our sincere apologies on behalf of the court for the technical glitch. We appreciate you doing this on zoom and be be on the lookout for an order from the court with respect to the supplemental briefing that we've discussed concerning mootness or potentially other issues. Yes, your honor. Thank you. Thank you all. Thank you.